THOMPSON, J.
 

 . The petition in this case_ alleges substantially:
 

 That the plaintiff, defendant, and one M. J. Henley agreed to form a corporation to be known as the W. H. Rowe Drilling Company, with a capital stock of $75,000. That a charter was prepared and signed on August 9, 1918, each of the three parties named subscribing for an equal amount of the capital stock. That the company began actual operations some 30 days before the charter was signed, and that during that time it became necessary to borrow money to carry on such operations. That arrangements were made with the Commercial National Bank of Shreveport for that purpose.
 

 That it was mutually agreed that each of said proposed incorporators would personally indorse all notes for the amounts borrowed from said bank. That prior to making the first' loan, however, the question of indorsing the notes came up again and was. thoroughly discussed by the defendant, Smith, who made the following statement to his two associates, W. H. Rowe and M. J. Henley:
 

 “On reconsideration, gentlemen, I have determined that, on account of being president of the Commercial National Bank, it will not look well for me to indorse the Rowe Drilling Company’s paper; besides the Bank Examiner may object to it, and furthermore I can let the company have more money if my name does not appear on its paper, but to show you that I intend to stand by our original agreement relative to all of us indorsing the company’s paper, I now say to you two gentlemen, Rowe and Henley, to just go ahead and indorse all notes that the company shall hereinafter give to the Commercial National Bank, and, if anything happens which shall cause you to have to pay said notes, then and in that event I will reimburse and pay you my share of the amount paid by you, just as though my name was written across the back of the said notes as one of them indorsers.”
 

 That pending the incorporation and organization of the company -various notes were executed in favor of the bank in the
 
 *15
 
 name of the Rowe Drilling Company, and which were indorsed by Rowe and Henley.
 

 The amount due the .bank on July IT, 1920, 'aggregated the sum of $47,000, and on that date a note for said amount was executed in the name of the company and indorsed by Rowe and Henley, payable in 90 days after date. -The note was reduced, by payments from time to time to the sum of $32,940.26, which amount was later paid by the plaintiff.
 

 This suit is brought against Smith to recover from him one-half of the amount thus paid by the plaintiff.
 

 It is alleged that Henley is insolvent, and that plaintiff is unable to collect from said Henley his proportion of the amount so paid by the plaintiff.
 

 An exception of no cause of action was filed and overruled by the court, and thereafter the defendant answered, specially denying that he had made the agreement as alleged in the petition.
 

 On a trial on the merits, judgment was rendered rejecting the plaintiff’s demand.
 

 The defendant has answered the appeal and prays that the exception of no cause of action be sustained.
 

 The exception is grounded on article 2278 of Civil Code, which declares that parol evidence shall not be received to prove any promise to pay the debt of a third person.
 

 If the promise of the defendant, which is the sole basis of the plaintiff’s suit, can be said to be a promise to pay the debt of a third person, then it is very clear that the petition discloses no cause of action, for the petition does not allege that the promise was in writing but on the contrary shows that the promise was a verbal one.
 

 We are of the opinion, however, that the agreement alleged upon does not fall within the prohibitive terms of the article of the Code relied upon.
 

 There were admittedly no contractual relations whatever between Smith and ; the Rowe Drilling Company.
 

 Smith made no promise to the creditor bank to pay the debt of the Rowe Drilling Company, and the bank is not here seeking to collect a debt of the company against Smith on a verbal promise.
 

 If the bank were endeavoring to hold Smith liable on this verbal promise, made only to his two associates, to pay one-third of the amount borrowed from the bank, then the rule of exclusion, of parol evidence to show such a promise or agreement would apply.
 

 But such is not the case. The suit is upon an original and independent contract by which the three parties agreed to borrow money for a joint venture then being put into operation, and for which money they agreed to become jointly and severally liable as between themselves. Two of the parties did become liable to the bank, and the other one obligated himself, not to the bank, but to his two associates in the enterprise, to bear his proportion of the amount in the event his two business associates should have to pay the debt to the bank.
 

 The promise was therefore made directly to Rowe and Henley, who with respect to the promisor (Smith) were not third parties, and the debt which he promised to pay them was not in any sense a debt of a third party within the meaning of the statute.
 

 The contract was one which the parties were competent to make—one which they were at liberty to make—and there is no law so far as we can find which requires that such an agreement should be reduced to writing in order to bind the parties as between themselves.
 

 We have examined all of the authorities cited and discussed at length in the brief of counsel for defendant, and we do not find them applicable to the facts as presented by the petition in this case.
 

 Our conclusion is that the exception was properly overruled.
 

 
 *17
 
 On the merits of the case we find, as did the district judge, that the plaintiff has failed to make out a case against the defendant with that degree of certainty required by law in actions of this character.
 

 The plaintiff and Henley testify positively that the defendant made the agreement and promise set out in the petition, while the defendant with equal emphasis testifies that he made no such agreement and promise.
 

 If the testimony rested there, it might be argued that the plaintiff had established his case by a preponderance of the evidence, if there was nothing to discredit the plaintiff’s testimony.
 

 There are circumstances disclosed by the record, however, that very strongly tend to weaken the plaintiff’s case and to leave grave doubt of the probability of defendant having made the promise imputed to him.
 

 We shall refer to only a few of these circumstances.
 

 In the original petition it was alleged that on or before April, 1918, the three parties agreed to form the corporation, and that active operations began some 60 days before the. company was legally incorporated—the charter was filed August 9, 1918. It was further 'alleged that immediately or shortly after the business was commenced, arrangements were made to borrow the money from the bank.
 

 Later in a supplemental petition it was averred that the parties determined to form the corporation on of about July 1,1918, and began business about the 1st of that month. It was further alleged that it was during the latter part of July when the necessity for borrowing money was determined and arrangements to that end were made.
 

 On thé trial of the case, the plaintiff and Henley both testified freely and fully that the contract with Smith was made between July 15 and 31, 1918. There was no contention on the trial that the contract between the parties was made later than July 31st.
 

 The evidence established the fact that Smith, was out of the city of Shreveport from July 5th to about August 10th and could not possibly have made the agreement at the time the plaintiff and Henley testified that it was made.
 

 After the evidence had been concluded and the case postponed for argument, the plaintiff submitted a written motion to reopen the case for the avowed purpose of introducing evidence to show that the alleged promise and agreement was made during the month of August.
 

 In this motion it is distinctly alleged that, if plaintiff was in error about said contract being entered into in the latter part of July, then he shows that the said contract was entered into some time during the month of August.
 

 It is further set forth in the motion to reopen that, had it not been for certain rulings of the court confining the evidence to the dates alleged in the amended petition, the plaintiff and Henley would have testified as they did on the trial that the contract was made between July 15th and 31st, but would have modified their testimony by saying that, the said contract grew out of the indorsing of the first paper given by the Rtfwe Drilling Company, and that, if the first loan was made through A. H. Van Hook, then the contract was made with the said Smith immediately after he returned from Chicago in August, 1918.
 

 We can find no error in restricting the plaintiff’s proof to the allegations of the petition, especially in view of the fact that by the allegations of the amended petition and the positive testimony of the plaintiff and Henley the contract was made between July 15th and 31st.
 

 After the case had gone against the plaintiff on the proof as to the dates claimed by plaintiff, it was not permissible for the plain
 
 *19
 
 tiff to shift'Ms position and to' prove or offer to prove that the contract was made in August after Smith returned from Chicago, and this proposed testimony ' depending on the fact as to whether the first loan was made by a party acting for the bank other than Smith.
 

 It may be conceded that ordinarily a slight difference between the proof and the allegations of the petition with respect to time and dates is not fatal, but certainly, when a plaintiff has testified positively and unequivocally that a contract was made between certain specified dates, and he is contradicted as to this, he cannot, for the purpose of meeting the evidence against him, be permitted to change about and to show that the contract, the basis of his suit, was made at a later date than the one alleged and testified to on the trial.
 

 The contradictory and uncertain attitude of the plaintiff in the matters referred to, in view of the other evidence and circumstances of the case, renders it altogether improbable that the defendant made the contract sued on.
 

 And, more than this, the hank made repeated written demands on the plaintiff for the payment of the note, and the plaintiff from time to time had the note extended or permitted it to'- become long past due, and finally the plaintiff executed to the bank his own personal note, secured by ample collateral, which he held, and with the proceeds of his own note took up the note of the Rowe Drilling Company. In the course of all of these transactions, Rowe never made known to Smith that he expected to hold him on a contract by which he agreed to reimburse him for his part of what Rowe might have to pay.
 

 It seems to us that the proper time to have mentioned to Smith or reminded him of his contractual liability would have been when the bank was demanding from Rowe full payment of the note on which he was indorser, and more especially when he took up said note by giving his own to the bank.
 

 This circumstance, to say the least, is against the present pretentions of the plaintiff, and tends to confirm the improbability that any such contract was ever made.
 

 Much has been said concerning a certain letter written by Smith 'to Rowe from Washington, dated September 20, 1920, and it is contended that' this letter shows -that Smith recognized his liability for the debt of the drilling company to the bank. We do not so regard the letter. It is true that Smith used the expressions:
 

 “My only thought now is to get rid of the indebtedness for which you are responsible, and I want you to consider now how you will straighten out these matters, as there is no time like the present to clean them up.”
 

 “I don’t know what to expect, and you will appreciate that I would like to have all these matters arranged and want- to know just what I will have to meet, as I. do not want to leave a mixed up estate or unknown debts in case anything happens to me.”
 

 There is nothing in these expressions to indicate that Smith recognized that he was legally obligated or had promised to pay any part of the debt to the bank.
 

 On the contrary, the statement is distinctly made and the admonition given to Rowe that he was responsible. for the debt to the bank and should meet the same.
 

 And it is not unlikely that Smith, being an officer of the bank and in a measure responsible for that institution making the loan, felt that he was morally obligated to the bank to see that the indebtedness was paid. This letter, when taken as a whole, is not inconsistent with the testimony of Smith that he never made the promise which the plaintiff says he made.
 

 We have carefully considered the evidence in the case, and can find no reason or justi
 
 *21
 
 fication for reversing the judgment appealed from.
 

 Judgment affirmed.
 

 O’NIELL, C. J.,
 

 is of the opinion that there is no occasion for considering the exception of no cause of action, when we affirm the judgment rejecting plaintiff’s demand on the merits, or for lack of merit; but he considers the exception well founded.